Cocher, if I'm pronouncing it correctly, v. Larksville Borough et al., number 13-1573. Ms. Pollack and Mr. Brown. Hello, Your Honor. Welcome back. May it please the Court, my name is Cynthia Pollack and I represent the appellant Scott Coker. We are here today asking that we are provided with a jury trial over this matter. Do you wish to reserve time for rebuttal? Yes, thank you. Three minutes for rebuttal. Sold. Thank you. We are seeking to have a jury trial because of the fact that we showed disputed issues a fact. We had shown that my client lost a full-time job as a police officer because the defendants fabricated a termination letter and disclosed the information within that termination letter. The problem you have here is, at the outset, I mean, was this your client? Was he essentially doing his job? He gets a call from the mayor, the mayor is at the bazaar, and it says that cars are parked illegally or where they should not be, and would the officer come over? The officer takes two hours to get over there. He was doing something else, but it appears that in the interim he also wasn't, he didn't get over there as fast as he could. The mayor was unhappy. The officer goes back to his boss and says, the mayor really dressed me down in very unkind language, and his boss says, hey, you better write it up. That's part of his official duty. What is he doing speaking as a citizen with regard to doing his official duty? And how is it a matter of public concern? Amen. And it is not his duties to report an official misconduct on behalf of the mayor that actually rose to the fact of him, the mayor, actually pointing him in the chest at the bazaar. It was so embarrassing and humiliating. It was rude and embarrassing, but how is it on a matter of public concern when, as Judge Ambrose has pointed out, this was set out in a report, an official report, an incident report, wasn't it? Which is what his job is. It went through the chain of command. He also spoke with the off-duty chief of police. And I would disagree because of the fact that it's like the Detroit mayor right now. When you have someone who is abusive, we have an obligation to you. You mean Toronto? Pardon? Detroit or Toronto? Oh, yeah, Toronto, I'm sorry. But he's all over the news. The new mayor coming into Detroit to replace Dave Bing would not be happy. Okay, I apologize. I'm a Pennsylvania boy, and comparing any borough in Pennsylvania to either Detroit or Toronto, it's just a little bit too much to take. I apologize, but that mayor that's all over the news that we see, his abusive behavior is absolutely 100% a matter of public concern because we don't want that mayor anymore. We should not want an abusive mayor to hold that power position. So we would want to know about that. And I had a witness, Sue Stevenson, who actually said that she would want to know about it. So it doesn't take it out of that a judge can determine without looking at my evidence. My evidence was that, number one, he did what he was doing. He was out there patrolling. There were police officers that were there at the bazaar that could help him with a parking ticket. Do you maintain, because I think you said it somewhere in your brief, you argued somewhere that Coker was reporting official misconduct? Absolutely. What was the official misconduct? Verbally being abused in public that a priest has to separate you from the aggressor, which was the mayor, that is official misconduct. You are breaching, you're abusing your power. Yes, you have power as a mayor to handle the police department, but in this case it was delegated to the police chief. Is there a suggestion that this argument rose to anything that was criminal in nature? Yes. My client did not make that conclusion. However, the defendants have admitted that he should have been arrested. For what? For, I would assume, assault. For being rude? No, assault. Did he strike your client? He put him in, like, the chest. My basketball coach used to do that to me every day. And you deserved it. At least he thought so. Well, but really let's get to the stigma plus claim, because I think that is really 100% of a situation that really needs to be ferreted out because of the fact that my client has lost a full-time job and will not be able to get a full-time job as a police officer because of the fact that they have a termination letter, which they have disclosed to another employee. Who's they? The defendants would be the municipality, Chief Kopko, the mayor. The mayor, the chief? Correct. And then the council president. Disclosed what? The details within the termination letter, which was approved at a council meeting and then pursuant to policies was placed in the personnel file, which is under the control of the police department. That's another, that's the second point. Your point there is that they released things that perhaps they shouldn't have, but the problem that you have there is that your client signed a waiver, did he not? The waiver is not valid, and it certainly was not valid after the background check was. The borough secretary does not release internal documents absent a waiver of the person who is involved in those documents. Your client was seeking to get another job and was willing to allow his file to be looked at, was it not? I mean, the borough secretary, I mean, she just, she swims in lane. And this is the interesting thing about this because she was a 30B6 opponent, so the district court was not to take her testimony based on Hill v. City of Scranton, Reeves v. Sanderson. But he, let's just get, he signed a waiver. What was unconscionable about his signing that waiver? What makes it invalid? Indefinite terms. Who does it cover? And the fact that he wasn't given any compensation, you have to get compensation in order to have a valid contract, that you're waiving a legal right. Well, the compensation is that he might get a job with another department. That's not sufficient. It's unlike when you get a job and you sign all those things the first day. Yes, that is valid. Do you have any support for that? Pardon? Do you have any support for that? I mean, if I'm trying to get a job with someone and I'm saying, they say, hey, we need to look at your file as your prior employment. And I say, sure. And I go for my prior employer and they say, you need to sign a waiver because we don't give these things out. I sign the waiver and I leave. What's so unconscionable about that? Because of the fact it's indefinite. In this case, his background was already done. So they shouldn't have reopened his background because it was already done. Maybe if it was ten years later, maybe. You might say that the waiver got stale. But this is just a few days later, right? No. It's actually for 2009 was when he signed the waiver that has no consideration. It's not valid. And there's no – it could be for anything. Well, then that means he had plenty of time to withdraw his consent to that waiver. And he went through the – well, it became an issue because of the fact that they opened up his personnel file after his background investigation was already complete. Did you raise the invalidity of the signed waiver in your brief? Absolutely. Where is that? I've forgotten it. The district court doesn't even really – it just touches the waiver. But it says that the defendant's reply brief. Well, I don't need to raise it because it's not – they're raising it as a defense. The district court talked about the waiver and said that, oh, we don't even have to really discuss it because they're not relying on the waiver to get out of this case. Yeah, but that's a pretty easy argument to anticipate in your opening brief. I mean, like, real easy. But why would I raise a defense for the defense? Because you take weaknesses and you try to make them your strengths. That's what advocacy is all about. I mean, you know what somebody is going to do. When you wait to the reply brief, and I remember once as an associate doing this and somebody said, hey, you don't understand something, reply briefs don't get read. Now, I'm not saying this one wasn't read, but the point is you have to make it your arguments in your opening brief. And we were on record as saying if you don't, you've waived it. Given that your claim here, your 14th Amendment claim, is based entirely on disclosure of a document that you believe should not have been disclosed, correct? Correct. Isn't the signed waiver the elephant in the room if it's not raised? No, because it wasn't valid, and it certainly did not cover someone opening up a personnel file. A presumptively valid waiver signed, which has to be rebutted and proven by you to be somehow invalid. Isn't that the elephant in the room? No, because the district court even said the defendants aren't relying on that as a defense, even though they had made arguments. Well, if that's the case, then you should have noted that in your opening brief. If that's really what was said by the defense before the court, then you've got a laid-down hand on that issue and you would sort of bat that out of the way. Why wait to your reply brief? I may have made an error in a sense of not putting it in. It doesn't substantively change my arguments because, again, it is now a defense they're trying to raise differently than was decided by the district court. They did not file an appeal. I filed the appeal in connection with what the district court dealt with, but the waiver I'm fine with, because he said it would be the totality of circumstances if that issue, if we would ever go down that issue, but we're not even going down that issue because the defendants are not asserting that it's a defense for their liability. So I agree with what the district court said, so why would I raise it when I agree with it? Perhaps. But I don't think it's going to trip me up because of the fact I have everything that is necessary for a stigma-plus claim. I have the fact that they fabricated the termination letter. It was disclosed. Absolutely, everybody admits to the Keekston Borough. Actually, he lost a job because of that. He will forever not pass backwards. He lost his job in Largsville because the council believed as a result, not so much of this incident, but other incidents that happened in the month from August to September, that this person wasn't doing his job and he needed to be relieved of duty. And the Borough of Largsville has a seven-step progressive discipline policy, and my gentleman had not one issue in the four years he was working. The only time he becomes a problem is after he has been pointed by the mayor and reports that conduct to the chief and other members of the department. So that's the only time he has an issue, and it's the only thing that's written in the personnel file that's bad, is that one termination letter. So the borough has an obligation to follow their policies that they have instilled, and that would go towards causation because they did not follow their policy, which gives you seven times to screw up, so to speak, before you're out the door. But in the end, the policy of the borough secretary was, I'll release information regarding one of our former employees if I have a waiver. And I would disagree with you, and that's why I should get to a jury. Because of the fact that they are claiming that the secretary released it. All the facts in the case show that Detective Kotchick and Detective Edwards from Largsville, Kingston guys, Largsville guys, are best friends. They talked before that guy ever went up there to the borough. But as it turns out, he also signed a waiver. But the waiver was not valid, and it was over a year and a half. I understand what your argument is, and I'm telling you, speaking personally, I don't buy it. But we'll get you back on rebuttal. Let's hear from Mr. Brown. Thank you. May it please the Court, Eric Brown for the Appellees, Largsville Borough, and three borough officials. As I understand Pellin's argument here today, I think the approach to the case needs to acknowledge several very well-settled legal principles. First and foremost is that the claims against the borough must be analyzed separately and independently from the claims against each of the individual defendants. So the effort or the inclination to collectively group all of the defendants together, arguing the defendants, plural, S, did X, did Y, is too general for purposes of a proper civil rights analysis. And second, the individual defendants, in order to be held liable, must have personal involvement in the alleged wrongs. There is no respondeat superior liability here for the actions of a borough secretary. I guess the issue here is, isn't the report of an elected official creating a public scene here a matter of public concern? It could be under certain circumstances, but the Court will look at the context in Garcetti, the context of what was reported and how it was done. Here you have a police officer on duty, paid to go to the bazaar, paid to listen and follow the directives of superiors, who gets yelled at, essentially, by his boss. He doesn't like it. We can argue over the wisdom of a boss addressing a situation like this in public or not. That's besides the point, I believe, for purposes of a constitutional violation. He then completes an incident report at the direction of two of his superiors. He places the incident report with all of the other incident reports done. He's required to complete incident reports after every incident, whether there's an arrest or not. He doesn't identify himself as the victim in the incident report. If you look at the content of the incident report... ...to fall under the rubric of any specific Pennsylvania criminal offense. It does not, and I think that's an important consideration. And it's a kind of just-cover-yourself kind of report that was prepared after he was advised to do it, right? Perhaps a classic CYA, note to file, this is what happened from my perspective. I was about to characterize it as that, but I thought it might be injudicious to use that term. But we all understand. You Delaware boys do. And a lot of other acronyms as well. In turning to the stigma plus claim, the only official action taken by the borough council here was a vote to discharge. And discharge by itself and any reputational harm that may come through just a simple discharge is not actionable as a liberty interest. There needs to be something more. Stigma plus. So here the claim itself turns on what happens during or immediately after the discharge. The dissemination of any allegedly stigmatizing comments. That was done undisputably by the borough secretary, a non-defendant. So to hold the borough liable for what a borough secretary does extends Monell well beyond any reported decision that I'm aware of in this circuit. It would essentially, if you were to adopt Mr. Coker's reasoning here, you would essentially be abandoning Monell, adopting respondeat superior in cases of liberty interest or at least cases involving dissemination of a personnel file in liberty interest. How do you respond to the argument that the waiver here was invalid? Or the consent form, if you will, to releasing his file? The borough defendants have never raised the waiver as a contractual right that they were entitled to indemnification. We've identified the waiver as. Well, they can't, can they? I mean, who prepared the waiver document? The waiver was prepared and signed by all accounts by Mr. Coker in connection with his employment application with a prospective employer. So, I mean, Larksville and its agents and employees aren't party to that at all. So, I mean, there couldn't be any kind of contractual relationship with Larksville and its agents. Correct. We're addressing the waiver from the context that it provides the secretary with apparent authority to do what she did. That explains her action. And that is the only reason we cite and address that waiver is that Mr. Coker, for whatever reason, provided apparent authority for the borough secretary here to disseminate the personnel file contents. In the absence of that, she would not have done that. Also important to note from the perspective of Manelka. So the form was given to him by the Kingston Borough people? I believe he testified in his deposition that it was part of the application process. He had to sign this background form, this background investigation form. Which makes sense. To move forward in the civil service investigation for the new job. But getting back to the Manelka liability here with the borough, there's no evidence that the borough secretary operated in accordance with a policy established by the borough council or that she sought the advice of the borough council that would then trigger some sort of directive or ratification. It may not be a policy, but it sounds, one would guess that it's probably her practice if somebody has, if someone wants information released, do you have a release form? Or do you have a consent form that I can release that information? No, there's nothing in record that would suggest that the borough council. She's an employee and not a policymaker or public official who would have the authority or ability to make policy just by a single act either. Correct, correct. That is our contention. And we apply that to all of the investigators. I'm not trying to be cute. I'm just saying that my guess is it probably was her practice. Not that it's a formal practice, but you would think that somebody in that position wouldn't necessarily, well, might go to a boss, but if you have a consent form, you just hand it over. You would assume that you've got the authority. And the Personnel Inspection Files Act that Pennsylvania has does permit employees to identify or delegate an agent to come in and inspect their file. So it's not unheard of under this statute to have a third party come in to take a look at a personnel file. That's authorized in the statute itself. So it's our contention that if you address each of the individual defendants independently from one another, you reach the conclusion that there's no evidence of record to support that Councilman Pekorovsky on his own retaliated against Mr. Cooper or disseminated false or stigmatizing comments about him to Kingston or any other third party. Therefore, he can't be personally liable for anything in this case. And you go through the same analysis with Mayor Zawadzki, who under the Burr Code has no authority to terminate Mr. Coker on his own anyway. That's a power reserved exclusively for a Burr Council to do. So there's no personal liability for Mr. Zawadzki as the mayor. And as Chief Kopko, the same analysis, there's no evidence of record that he is a final policymaker with final and unreviewable authority to terminate Mr. Coker or to disseminate information regarding Mr. Coker or that he was involved in the dissemination to Kingston Borough. We believe the district court approached the case properly by analyzing each claim against each defendant independently. And for any alleged wrongs committed by Detective Edwards or the Burr secretary, non-policymakers must be disregarded because they are not defendants in the case. Anything further? I have nothing further. Thank you very much. Ms. Pollack. It's an issue of fact whether you believe a 30B6 witness, which was the Burrough, and even if the Burrough secretary, even if you, let's take her out of the mix. The facts that the chief spoke with the detective after the personnel file was opened up shows and proves that it was disclosed, the contents thereof. You mean the fact of the conversation permits an inference as to something specific said in that conversation? Absolutely. The mere fact of the conversation? Absolutely. Because if I can infer it, the judge is supposed to view all the facts in my favor because I'm the one opposing the summary judgment motion. And based on, you know, Hilbert's... All you have, the only fact you have is the fact of the conversation, not facts as to anything that was said. Am I correct? Well, I have a letter that the, you know, the chief wrote that they saw and it was ratified by the counsel to permit it to be disclosed. And certainly, having been in human resources before, I can tell you, you do not open up a personnel file ever. But interesting, you were saying that this release or consent form, this waiver form, was there was no consideration. But in this case, there has to be consideration because it is a Kingston form. And if he doesn't sign that waiver, he doesn't get considered for the job at Kingston that he wants. That has to be consideration. Well, I would disagree with you because he actually had to pay to apply to Kingston. How does that change the equation? So I would disagree because the only... There isn't any... You don't get anything from signing that consent form. You get consideration for a job. I consent to this release and you agree to consider me for this position. Why isn't that consideration going both ways? Well, certainly the jury can decide that. And based on the... That's a legal question. Well, it's not actually because the judge in his opinion said, you know, that were the enforceability of the waiver and release to be considered, it would be determined by considering the totality of the circumstances test adopted by the Third Circuit in Sorello. So I would disagree with you that they automatically win. You have to view all the facts in my favor so my client gets the opportunity... What fact is in your favor that there was not consideration? Because of the fact every contract in the state of Pennsylvania has to have consideration. And what would it lead you to indicate there? In order for me to be considered for this job, I am willing to allow prior employers to give you information about me. And you have to have consideration. It's unlike when you get a job... The consideration is he was being evaluated and probably it looked like he was on the way to being considered favorably for this job absent something coming out that was negative from the prior files. I would agree with you in the sense on the evaluation. However, I would disagree that you view all the facts against me in connection with whether this waiver was valid and enforceable. You know from law school that consideration can be a peppercorn, right? I mean, that's first-year law school contracts. My thoughts are with the employment, the only reason why when you're first at the job that you sign all that is because you get and those are all valid is because you get the job. That's not what we're dealing with. He was to be considered for this job, but he wanted. And I would, it's apples and oranges, so I would just argue that the jury should be able to decide whether... Can you imagine the consequences if we decided your way that this wasn't consideration? I mean, how this would affect the myriad cases down the road that says, hey, you got the Third Circuit saying that's not consideration or might not be consideration. Well, the district court says that it would be based on the totality of the circumstances, so I do not believe it's... Totality of the circumstances for purposes of determining whether this is consideration or not consideration, a pure legal question. Might we not even have the implication of that pari-old principle known as the parole evidence rule? That may be the case, but based on the district court's opinion and defendant's admission here today, they were not using it as a defense. They're using it to show that they're reasonable, which was page 842. Creative argument. Pardon? I said it's a creative argument. All right, thank you very much. Thank you. Thank you for both counsel. We'll take the matter under advisement.